UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-5895(DSD/AJB)

Clam Corporation, Inc.,

            Plaintiff,

v.                                          **ORDER**

Innovative Outdoor Solutions,
Inc., & Otter Outdoors, LLC,

            Defendants.


        John M. Weyrauch, Esq., Paul P. Kempf, Esq. and Dicke,
        Billig & Czaja, 100 South fifth Street, Suite 2250,
        Minneapolis, MN 55402, counsel for plaintiff.

        Norman M. Abramson, Esq., Lori L. Wiese-Parks, Esq., Joy
        Reopelle Anderson, Esq. and Gray, Plant, Mooty, Mooty &
        Bennett, 500 IDS Center, 80 South Eighth Street,
        Minneapolis, MN 55402, counsel for defendants.


        This matter came on for hearing on December 12, 2008, upon
plaintiff's motion for a temporary restraining order.  Plaintiff
and defendants appeared through counsel.  Based upon a review of
the file, record and proceedings herein, the arguments of counsel
at the hearing, and the reasons stated on the record, the court
denies plaintiff's motion.


                        **BACKGROUND**

        This trademark dispute arises out of defendants' promotion and
sale of two styles of portable ice fishing shelters.  For twenty
years, plaintiff Clam Corporation, Inc. ("Clam") has made and sold

blue portable ice fishing shelters.  For approximately ten years, defendant Otter Outdoors, LLC ("Otter") has made and sold purple and green portable ice fishing shelters.[1]

In February 2004, Clam applied with the Patent and Trademark Office ("PTO") for a trademark on the color blue as applied to its ice fishing shelters.  The PTO initially refused registration because the color blue was "merely an ornamental or decorative feature of the goods," and requested additional evidence of the color's distinctiveness. (Def. Am. Answer Ex. C.)  Clam responded with a declaration from its president, Dennis Clark, identifying $52 million in gross sales of the blue ice fishing shelters and $3 million in advertising expenditures since 1988, some of which expressly linked the color blue with Clam's products. (Id. Ex. D ¶ 2.)  The declaration further indicated that the shade of blue used on Clam's shelters was Pantone 285C[2] and that none of Clam's seven known competitors used blue on their shelters. (Id. ¶ 3.)  Clam also provided declarations from two retailers stating that they recognized the color blue as a source identifier of Clam's shelters. (Weyrauch Decl. Ex. A.)  With this evidence, Clam requested amendment of its application to include a color drawing of the mark and the following language: "The color 'blue' is

---

[1] Otter is wholly owned by defendant Innovative Outdoor Solutions, Inc.

[2] The Pantone Matching System identifies colors through numbers and letters.

2

claimed as the sole feature of the mark.  The color appears on the entire exterior cover of portable ice fishing shelters made and sold by [Clam].  The blue is classified as [Pantone] #285C."  (Am. Answer Ex. C.)  The PTO granted Clam's amended application and issued United States Trademark Registration Number 3,025,241 ("241 Mark") on December 13, 2005.

On November 30, 2007, Otter introduced to the public a shelter with a new exterior design called Ice Camo ("Camo Shelter").  Otter displayed the Camo Shelter at the December 2007 St. Paul Ice Fishing Show, a large industry event attended by Clam.  The Camo Shelter has a camouflage pattern in black and two different shades of blue, Pantones 284C and 287C, on the shelter's exterior sides. The Camo Shelter's roof and skirt are black and the marks OTTER OUTDOORS or TEAM OTTER are printed in large white letters on the sides and top of the shelter.  Otter sold the Camo Shelter during the 2007 ice fishing season with no objection from Clam.

Otter introduced another blue shelter ("Arctic Shelter") to the public in September 2008.  The Arctic Shelter uses Pantone 287C in a solid pattern on its exterior walls.  The Arctic Shelter also has a black roof and skirt, and the OTTER OUTDOORS mark is printed in large white letters on its sides and roof.

In October 2008, Clam objected to Otter's use of blue on the exterior of its shelters.  Unable to reach an agreement with Otter, Clam filed this action on November 3, 2008, seeking damages and

injunctive relief.   Thereafter, Otter and Clam attended the 2008
St. Paul Ice Fishing Show the weekend of December 6, 2008.[3]  Otter
displayed and sold the Camo and Arctic Shelters at the show and
took advanced orders for additional shelters.   On December 10,
2008, Clam filed the instant motion for a temporary restraining
order enjoining Otter's use of the color blue on its shelters.
This written order follows the court's denial of Clam's motion at
the December 12, 2008, hearing.


## DISCUSSION

     The court considers four familiar factors in determining
whether a temporary restraining order should issue: (1) whether
there is a substantial probability that the movant will prevail on
the merits, (2) whether there is a substantial threat that the
movant will suffer irreparable harm if relief is not granted, (3)
whether the irreparable harm to the movant outweighs any potential
harm that granting a preliminary injunction may cause the non-
moving parties and (4) what action is in the public interest.
Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th
Cir. 1981) (en banc).   The court balances these factors to
determine whether the order is warranted.   See Taylor Corp. v. Four
Seasons Greetings, LLC, 315 F.3d 1039, 1041 (8th Cir. 2003).

---

     [3] An estimated fifty percent of portable ice fishing shelters
are sold in December.

Plaintiff bears the burden of proving all four factors.   <u>See</u>
<u>Watkins, Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003).

## A.    Likelihood of Success

Clam argues that it is likely to succeed on its claim for
trademark infringement under the Lanham Act, 15 U.S.C. § 1114.   To
establish infringement under § 1114 a plaintiff must establish the
existence of a valid trademark and likelihood of confusion.   <u>See</u>
<u>Thelen Oil Co. v. Fina Oil & Chem. Co.</u>, 962 F.2d 821, 822 (8th Cir.
1992).

### 1.    Trademark Validity

A color may only be protected by a trademark if it has
acquired secondary meaning.   <u>MSP Corp. v. Westech Instruments,</u>
<u>Inc.</u>, 500 F. Supp. 2d 1198, 1211 (D. Minn. 2007) (citing <u>Wal-Mart</u>
<u>Stores, Inc. v. Samara Bros., Inc.</u>, 529 U.S. 205, 211 (2000)).   A
color attains secondary meaning when "in the minds of the public,
the primary significance of [the color] is to identify the source
of the product rather than the product itself."   <u>Wal-Mart Stores,</u>
<u>Inc.</u>, 529 U.S. at 211 (quotation omitted).   Secondary meaning for
a color may be shown through survey evidence, extensive and
continuous use of the color for a significant period of time and
substantial promotion of that color through advertisement.   <u>MSP</u>
<u>Corp.</u>, 500 F. Supp. 2d at 1214 (citing <u>In re Owens-Corning</u>
<u>Fiberglas Corp.</u>, 774 F.2d 1116, 1125 (Fed. Cir. 1985)).
Registration of a trademark is prima facie evidence of its

5

validity.  First Bank v. First Bank Sys., 84 F.3d 1040, 1044 (8th Cir. 1996).

Mark 241 is presumptively valid.  Moreover, the record reflects that Clam's shelters have been blue for over twenty years, Clam has expressly linked its shelters to the color blue in advertisements and two retailers identify Clam's products with the color blue.  (See Am. Answer Ex. D.)  Otter, however, notes that other companies in the portable ice fishing shelter industry use the same colors, thus indicating that consumers do not use color as a source identifier for shelters.  Otter also argues that Clam failed to disclose to the PTO that some of its competitors produced and sold shelters in other shades of blue at the time the PTO issued Mark 241.  Despite these arguments, the court determines that Clam has shown that Mark 241 is likely valid.

   **2.   Likelihood of Confusion**

The court considers six factors when assessing likelihood of confusion: "1) the strength of plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers, and 6) evidence of actual confusion."  Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005) (citing SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)).  These factors

guide the court's analysis but are not to be rigidly applied.  Kemp
v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1054 (8th Cir. 2005).
Instead, "no one factor controls, and because the inquiry is
inherently case-specific, different factors may be entitled to more
weight in different cases." Id. (citing SquirtCo, 628 F.2d at
1091).

In this case, Mark 241 is presumptively valid and there is
record evidence that the color blue is a source identifier of
Clam's shelters.  Thus, the strength of Clam's mark supports a
likelihood of confusion.  Moreover, Clam and Otter both compete in
the portable ice fishing shelter market, and although Clam's
shelters are generally cheaper than the Camo and Arctic Shelters,
(Soregaroli Decl. ¶ 8), the direct competition in the larger market
supports a likelihood of confusion.  The remaining factors,
however, do not support Clam.

First, Mark 241 expressly refers to Pantone 285C and indicates
that the color appears on the entire exterior of the shelter.  In
contrast, the Camo and Arctic Shelters use different shades of
blue, have black tops and are identified as Otter's products in
large, easily legible lettering.  When viewed side by side, the
blue used by Otter is manifestly distinct from that protected by
Mark 241.  The court acknowledges that absent a side-by-side
comparison this distinction diminishes.  See Kemp, 398 F.3d at 1054
(side-by-side comparison inappropriate without reference to market

7

conditions in which consumers likely to find products). Nevertheless, the black roofs on Otter's shelters, the camouflage pattern on the Camo Shelter and the clear identification of Otter weigh against the similarity of the marks. Therefore, this factor equally supports Clam and Otter.

Second, the only evidence of Otter's intent to confuse the public is its knowledge of Clam's past use of blue and its decision to manufacture and sell shelters of a different shade of blue. The record, however, indicates that Otter did not know of Clam's trademark, and nothing suggests that Otter intended to benefit from Clam's goodwill. Indeed, the conspicuous labeling of the Camo and Arctic Shelters with Otter's mark weighs strongly against Otter's intent to confuse the public. See Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 871 (8th Cir. 1994). Accordingly, this factor does not support Clam.

Third, the disputed shelters range in price from $200 to $700, suggesting that consumers exercise a high degree of care in making purchasing decisions. Moreover, the harsh winter conditions in which the shelters are used and the specialized niche market of portable ice fishing shelters support an informed and considered purchasing decision by consumers. See Frosty Treats, Inc. v. Sony Computer Entm't, Inc., 426 F.3d 1001, 1010 (8th Cir. 2005) (price and type of product used to assess degree of care). Therefore, this factor weighs against a likelihood of confusion.

8

Finally, even though Otter has sold the Camo Shelter since the 2007 ice fishing season, the record contains no evidence of actual consumer confusion. Therefore, this factor weighs against a finding of likelihood of confusion. See Ambrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1543 (8th Cir. 1986) ("Actual consumer confusion is the best evidence of likelihood of confusion.").

In sum, both parties present strong arguments on the merits of Clam's trademark infringement claim. However, after careful consideration of the relevant factors, the court determines that Clam has not satisfied its burden of showing a likelihood of success on the merits of its claim. Therefore, the first Dataphase factor does not support issuance of a temporary restraining order.

**B.    Irreparable Harm**

Irreparable harm, is perhaps the most important factor for a court's consideration as "'[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" Watkins Inc., 346 F.3d at 844 (quoting Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999)). Failure to show irreparable harm is an independently sufficient ground upon which to deny injunctive relief. See id. Indeed, where legal remedies are adequate, injunctive relief is never appropriate. See id. (citing Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 2003)).

Trademark infringement constitutes irreparable harm.  See Mut. of Omaha Ins. Co. v. Novak, 836 F.2d 397, 403 n.11 (8th Cir. 1988). As discussed earlier, however, Clam has not established a likelihood of success on its trademark infringement claim and money damages can remedy any lost profits resulting from Otter's alleged infringement of the 241 Mark.  Moreover, Clam's failure to object to the Camo Shelter during the 2007 season and its delay of several weeks in bringing the instant motion belies Clam's claim of immediate and irreparable harm.  See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir. 1999). Therefore, Clam has not established irreparable harm and a temporary restraining order is not warranted.  Accordingly, the court need not address the final two Dataphase factors.

## CONCLUSION

**IT IS HEREBY ORDERED** that Clam's motion for a temporary restraining order [Doc. No. 10] is denied.

Dated:  December 15, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court